In the Matter of WILDFLOWER LANDHOLDING ASSOCIATES LTD., Debtor.

Bernard L. GEORSKEY, Plaintiff,

v.

WILDFLOWER LANDHOLDING ASSOCIATES LTD., Defendant.

Bankruptcy No. 81–2194.
Adv. No. 83–851.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 13, 1985.

Langfred W. White, Tampa, Fla., for defendant.

Harley E. Riedel, Tampa, Fla., for plaintiff.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a Chapter 11 case and the matter under consideration is a complaint filed by Bernard L. Georskey (Plaintiff) against the Debtor, Wildflower Landholding Associates Ltd. (Debtor). The Plaintiff seeks damages for the alleged breach of certain covenants contained in a real estate sales contract. The facts relevant to a resolution of the controversy under consideration can be summarized as follows:

On August 5, 1977, the Plaintiff and Lemon Bay Golf and Tennis Club, Inc.

(Lemon Bay) entered into a contract for the sale of real estate located in Charlotte County, Florida. Lemon Bay was the owner of the property which contained, among other things, a golf course and sewer treatment plant. The sales contract provided that Lemon Bay would sell a portion of its property to the Plaintiff who intended to develop the land into a mobile home park. Lemon Bay was to retain the land which contained the golf course and the sewer plan. In addition, the contract provided as follows:

"... 6. The Seller agrees to make available to the Buyer, water and sewer services for all the lands subject to this Contract on a non-discriminatory basis. Said service shall be made available to the perimeter of Buyers lands. It shall be Buyers responsibility and cost to construct a distribution system within Buyers lands in accordance with the appropriate government regulations except for Gasparilla Pines Subdivision which is already installed.

7. It is anticipated that the Buyer will develop the lands subject to this Contract into a mobile home park or subdivision. The Seller agrees to grant to each purchaser of a lot, one year free full membership to the golf and tennis club operated and maintained by the Seller on its remaining lands and thereafter to admit such purchasers as members of such club on a non-discriminatory basis. Such free membership shall commence either upon closing of the sale of a lot or upon the opening of the permanent clubhouse anticipated by Seller, at the option of the lot purchaser ..."

"... 11. Seller shall provide Buyer, at Buyers option, a dedicated road in accordance with applicable county regulations for access to Lots 1, 30, 19, 18, 31, 72, 73, 74 and 75 of PHASE III of said lands, as per preliminary plat thereof attached hereto ..."

The contract terms were not included in the deed and the contract itself was never recorded in the public records. For some time, sewer tap-ins and golf course mem-

berships were provided by Lemon Bay per the contract.

In October of 1979, Lemon Bay conveyed the remaining portion of its land, including the golf course and sewer plant to the Debtor. The Debtor is a Florida limited partnership of which Lemon Bay is one of two general partners.

From October 1979, when the Debtor acquired the property until 1982, the Debtor honored all commitments made by Lemon Bay. In 1982, however, the Debtor refused to give free memberships to certain purchasers of the Plaintiff's mobile home lots. In 1982, the Debtor also refused tap-ins to its sewer plan for lot owners unless the Plaintiff provided $35,000 for expanding the capacity of the plan. The $35,000 was to be credited against future tap in fees which under normal circumstances ran $500 per tap in. It appears that the $35,000 was necessary inasmuch as the plant had reached its maximum capacity and without expansion, or the building of a whole new plant, the Debtor simply did not have the ability to provide tap ins to lot owners.

It should be noted that the contract between the Plaintiff and Lemon Bay was negotiated on behalf of Lemon by its then president, A.A. Grillo. A.A. Grillo remained as president of Lemon Bay after the Lemon Bay land was transferred to the Debtor. His son, David Grillo took control of the corporation thereafter.

The question presented by the above-outlined facts is whether the Debtor is bound by the covenants in the contract for sale of real estate between the Plaintiff and Lemon Bay. In addition, if the Debtor is bound by those covenants, the Court must determine if those covenants have indeed been breached causing damage to the Plaintiff.

The Debtor raises the following defenses to the action:

A. That the covenants contained in the contract between the Plaintiff and Lemon Bay merged into the deed executed by Lemon Bay which failed to contain the contract covenants.

B. Should it be found that the covenants did not merge into the Deed then the Debtor is not liable on those covenants which were not part of the public record.

C. That even if bound by the covenants, the Debtor is free from liability because;

1. With respect to the road, the Plaintiff has failed to make demand on the Debtor that the road be built.

2. With respect to the sewer tap ins, the Debtor has complied with the contract by providing service on a "non-discriminatory basis."

D. The Plaintiff has failed to carry its burden of proof with regard to damages.

A fifth defense is based upon the fact that the Plaintiff is now the owner of the sewer plant and golf course; having purchased those properties at a post-petition auction of the land by the Debtor. The Debtor contends that if it is determined that subsequent owners of the land are liable for the covenants of Lemon Bay, then the Plaintiff, as the present owner, is responsible for those covenants and at most the Debtor is liable only for those damages which arose during its ownership of the facilities.

■ Assuming, arguendo, that the covenants contained in the contract do not merge into the deed and that they run with the land and thus bind the Debtor, this Court is still unable to award damages to the Plaintiff for either the golf course memberships or the sewer tap ins. Although the Plaintiff attempted to present evidence as to the extent of the damages incurred by virtue of the Debtor's alleged breach, such evidence was highly speculative and not sufficient for this Court to make a meaningful determination of damages. There was no definite showing of how many memberships or sewer tap ins would be needed in the future and this Court cannot award damages without more concrete evidence. Damages for the alleged breach of the covenants to provide free golf course memberships and sewer tap ins must, therefore, be denied.

■ Inasmuch as it appears that the original parties to the sales contract intended that the covenants would be enforceable regardless of the fact that they do not appear in the deed, this Court is convinced that the covenants did not merge into the deed. *Milu, Inc. v. Duke*, 204 So.2d 31 (Fla. 3d DCA 1967).

■ With respect to the obligation to build the road it is clear that such covenant is binding upon the Debtor as an equitable servitude. The Debtor, when it acquired the property from Lemon Bay, had actual knowledge of the covenant via the knowledge of A.A. Grillo, the president of Lemon Bay. In addition, it is clear that the covenant is one which touches and concerns the land of both parties. The road which was contemplated lies on the border of the lands owned by the Plaintiff and land now owned by the Debtor. It is obvious then that the building of the road would affect the character of both properties. A benefit and burden would run to both lands in this particular case and thus, the covenant to build the road is binding on the Debtor. *See generally*, 20 Am.Jur.2d *Covenants, Conditions, and Restrictions*, § 292 et seq. (1984).

■ The Debtor's contention that it is not bound to build the road because there has been no demand from the Plaintiff must fail. The fact that demand may or may not as of yet been made certainly does not relieve a responsible party from an obligation undertaken. In any event, demand was made, albeit post-petition, for the road to be built. The fact that demand was made on Lemon Bay rather than the Debtor is inconsequential. That Lemon Bay transferred the property to the Debtor does not relieve it of liability. Lemon Bay remained the general partner of the Debtor and knowledge of the demand must, therefore, be imputed to the Debtor. F.S. § 620.615 (1972).

■ The Debtor's argument that because the property is now owned by the Plaintiff the Debtor is no longer obligated under the contract is without merit. The case of *Headley v. Lewis*, 160 So.2d 172 (Fla. 3d DCA 1964) is on point. In the *Headley* case the Court held that a covenant to make improvements is binding upon the covenantor even though he subsequently transfers the property. The court reasoned that to hold otherwise would allow a covenantor to cure his own wrongdoing merely by transferring the real property in question.

It is clear in the case at hand that demand for construction of the remaining portion of the road was made while the Debtor was the owner of the land and while it was obligated to comply with the covenant to build the road. To allow the Debtor to escape liability, simply because it has now transferred the land, would be inequitable and would contradict the holding and reasoning of the *Headly, supra* case. The fact that the Plaintiff is now the owner of the land is of no consequence.

Although the evidence on this point was rather confusing, this Court is satisfied that there is an obligation and a need to complete the construction of the unfinished portion of the road. Unfortunately, the evidence presented on this point failed to furnish any firm guidance as to the cost. Based on the foregoing, before this Court is in a position to enter a money judgment determining the costs of completion, parties are directed to submit affidavits of estimation of completion within 15 days from the entry of this Opinion.

In accordance with the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Parties are hereby directed to file affidavits of estimation of completion within 15 days from the date of entry of this Opinion. Upon receipt of the affidavits, this Court will enter a final judgment accordingly.